GastoN, Judge,
 

 having stated the case as above, proceeded as follows: Upon the proofs, we have no hesitation in declaring that the allegation in the bill, that the late Mr. Hill purchased the land at the sheriff’s sale in trust for the plaintiffs, and upon an agreement to hold the same as a security only, is not m'erely not established but is disproved. No objection has been made to the evidence because of its being
 
 yarol
 
 testimony; and therefore, without enquiring whether it might not have been objected to on that account, we have fully considered the whole of it. In the first place, there is not a particle of proof that the bystanders understood or supposed that Mr. Hill was buying the land in for the plaintiffs, and on that account declined from competing with him at the sale. In the next place, no individual testifies that he was
 
 *206
 
 present when the alleged agreement was entered into, and ^ess was ca^e^ uPon to take notice of the nature and terms of that agreement. The sole testimony on which the plaintiffs rely to establish this agreement, is that of witnesses who. speak to loose declarations of Mr. Hill, probably imperfectly understood and yet more imperfectly remembered. This is to be found in the depositions of William D. Jones, Aaron Bledsoe and Henry Cooper. The first of these was the
 
 crier
 
 at the sale, and he testifies that before the sale began, he saw Mr. Hill and some of the plaintiffs in private conversation; that after this, ancl as the sale was about to begin, Mr. Hill told him that he was about “ to enter into a disagreeable business, to buy the land for the boys;” that after the sale, he heard Mr. Hill say that lie had bought it for the boys. He does not know that any notice of this intention of Mr. Hill so to buy was, at the time of the sale, given to others, nor that it in any respect influenced the price of the land. He also states the fact, that while the land was up, Mr. Hill recalled his bid — went off into the court-house —and then returned and renewed it. Aaron Bledsoe testifies, that after Mr. Hill had sold the land, he heard him say that he had bought it for the Foster boys, and had sold it to Jones under the understanding that Jones was buying for -them; and Henry Cooper deposes, that after Mr. Hill had bought the land, the witness, supposing that he intended to settle negroes on it and would want an overseer, applied to Mr. Hill to be retained as such, when the latter declined employing him, saying that he had bought it for the young Fosters and did not mean to settle it. Were this
 
 all
 
 the evidence, it would be very unsatisfactory on which to declare the existence of the agreement alleged in the bill. It was so easy to mistake a remark of Mr. Hill, that he was about to do a disagreeable business in buying the land
 
 of
 
 the boys, for the one supposed by the witness, Jones, of buying it
 
 for
 
 the
 
 boys
 
 — and also so easy to misinterpret general declarations of a willingness or an expectation to let the heirs of Foster have the land again, into acknowledgments of a purchase on their account — that we should certainly hesitate very much, to say the least, in founding any decree thereon. But there is plenary evidence, we think, that in fact the witnesses have so
 
 *207
 
 misapprehended the remarks about which they testify. Washington Branch, a witness for the plaintiffs, deposes, that on' the day of the sale, he, in the behalf and as the friend of the plaintiffs, applied to Mr. Hill to learn whether he would let the plaintiffs have the land back, and was answered that he would, at the price of $>1,000 — that having been put to the trouble of buying, he was determined not to sell without being paid for his trouble. Frederick Leonard, who was present at the sale, also, at the instance of Henry Foster, one of the plaintiffs, made the same application to Mr. Hill, on the same evening, and received the same answer. This witness communicated Mr. Hill’s terms to Henry, and he declined the purchase. There is not the slightest intimation from these agents for the plaintiffs, that it was then pretended that'Mr. Hill had bought under any agreement with or in trust for them; and the latter is explicit in declaring that he understood that Mr. Hill purchased absolutely and for himself. The sheriff, Henry G. Williams, who sold the land; the wit. ness, Leonard, Benjamin Bledsoe and Richard Noble, who were present at the sale, all understood that Hill was buying absolutely for himself. The plaintiffs have not pretended that Mr. Hill was unfaithful to his alleged engagement; but-have insisted that he always recognized the trust, and conveyed to the defendant expressly as his substitute, and in trust 'for them. Mrs. Hill, his widow, and Daniel S. Hill, his son, have been examined upon this part of the case. The former has never heard any such recognition — the latter is full and explicit against it, and his testimony relating to a part of the
 
 res gestee,
 
 is material and strong, to disprove the pretended trust. He was present at the sale, and on the evening after it was made, and, as we collect from his deposition, before the applications to his father through Branch and Leonard, heard his father relate the circumstances under which he purchased. His father said, that he discovered that there was a .disposition manifested by some persons to hurt the sale of the land, by depreciating its value as being less than what was bid for it — that he then went off and ascertained what was the amount necessary to be raised to pay off the judgment of his wards — that he returned and bid that amount, declaring
 
 *208
 
 that if any person would bid more, he might have it — that he heard his father say, that his sole motive for baying, xvas to save the debt for which he considered himself responsible— that the heirs ought not to be angry with him, for they had had a fair opportunity of buying — that he was under no obligation to let them have it back — he has heard his father since .say that they might have it back for $1,000 — and that he was disposed to give them a preference, at that price, to any other person — but, as he collected from his father’s declarations, he felt himself at liberty to sell to any other person. This evidence is strongly confirmed by the deposition of William K. Fallrner, taken by the plaintiffs. He is examined as to Mr. Hill’s declarations to him, after the purchase by Jones, and states that Mr. Hill enquired if there was not a dispute between Jones and the buys in relation to the land; and, upon being informed that there was, and that it was said the boys found some fault with
 
 him,
 
 he answered that they had no cause to be displeased; that he had waited a considerable time to see what they would do; that when he bought, (meaning no doubt the applications herein before mentioned,) they had made application to him, to get the land back, but had never since said a word more to him on the subject; that he was in debt, and
 
 obliged
 
 to have money, and sold the land to raise it. The testimony of Aaron Bledsoe, weak as it is, is rendered yet weaker by a fact which is testified by Benjamin Bled-soe; that the said Aaron informed him, that in a conversation with Mr. Hill about the land, before he sold it to Jones, Mr. Hill observed, that if lie could not sell, he would settle his son-in-law, Dr. Malone, upon it. If, in connection with this evidence, we consider the extraordinary character of the trust alledged — that Mr. Hill, who, though a man of property, was then in debt, and pressed for money to pay it, would bid off the land for the amount of the judgment and make himself thereby accountable to his wards for so much money in his hands, yet hold the land simply as a security, allowing the plaintiffs an unlimited time for redemption — we hazard nothing, we think, in pronouncing that he did not purchase in trust for the plaintiffs, as by them alledged.
 

 This allegation being disproved, it is not material to exam
 
 *209
 
 ine whether the defendant bought upon any trust, and if so, what trust for the plaintiffs; for unless the facts proved with those alledged, the plaintiffs cannot have a decree; and the very foundation of their claim, as alledged, is an original purchase in trust for them by Hill and a devolution of
 
 that trust
 
 upon Jones. We have, however, examined all the evidence relating to Jones’s purchase; and we are obliged to say, without commenting minutely upon it, that this evidence leaves it wholly uncertain whether Jones bought upon any previous agreement with the plaintiffs, or only with an intention to make an arrangement with them, which had been talked of before his purchase, and which, it was thought, would be mutually agreeable — and equally in doubt, if there was a previous agreement, whether, by that agreement, the plaintiffs were to have the whole of the land or all except the part close to Jones’s house, and, therefore, peculiarly desirable to him. In this state of the evidence, independently of the failure of the plaintiffs to shew a trust in the original purchaser, their bill could not be sustained.
 

 The bill of the plaintiffs is to be dismissed; and, because of the falsehood in the main allegation, it should be dismissed with costs.
 

 Per Curiam. Bill dismissed..